UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.                                                   **DECISION AND ORDER**
                                                                    09-CR-79S

STEVEN D. BLUMHAGEN,

                Defendant.

## I. INTRODUCTION

Defendant Steven D. Blumhagen is charged in a 9-count indictment with seven counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371; and one forfeiture count seeking a $695,000 money judgment. (Docket No. 1.) These charges stem from Blumhagen's alleged involvement with Michael Kujawa in a scheme to defraud various companies and individuals.

Presently before this Court is Blumhagen's Supplemental Pretrial motion. (Docket No. 172.) Blumhagen's previous pretrial motions were denied. (Docket Nos. 10, 16, 116, 128.) For the following reasons, Blumhagen's present motion is also denied.

## II. BACKGROUND

### A.   The Indictment

The indictment alleges that Blumhagen owned a company called Financial Acquisition and Trading, LLC ("FAT, LLC") and that Kujawa owned a company called West Coast Finance, LLC ("WCF, LLC"). According to the indictment, Blumhagen used

1

FAT, LLC, to solicit funds from various companies and individuals promising them that he would assist them in a purported bond offering that would generate large sums of money that the companies and individuals would receive to fund their various projects.

Blumhagen (and later Kujawa, under Blumhagen's direction) falsely informed these companies and individuals that they needed to pay "advance fees" or "application fees" up front to participate in the bond offering. These fees were purportedly necessary to pay, *inter alia*, legal, underwriting, and bond-rating agency fees affiliated with the bond offerings. But the truth, according to the indictment, was that no such advance fees were required to execute a bond offering. Nonetheless, knowing that no advance fees were required, Blumhagen and Kujawa charged between 0.1% and 1% of the total amount of the purported bond offering as an advance fee.

To further induce payment of these advance fees, Blumhagen and Kujawa falsely informed the companies and individuals that after they paid the advance fees, the bond offering would close within 45 to 90 days, at which time they would receive the bond money to finance their projects. Blumhagen and Kujawa also advised these companies and individuals that their advance fees would be refunded to them if the bond offering did not close, which was false.

The victims of Blumhagen's bond-offering scheme wired their payments to FAT, LLC, or WCF, LLC.

**B.    Previous Pretrial Motions**

As noted above, Blumhagen's present pretrial motion does not arrive on a blank slate. On November 12, 2009, the Honorable Hugh B. Scott, United States Magistrate Judge, filed a Report and Recommendation recommending denial of Blumhagen's first

set of pretrial motions.  (Docket No. 10.)  In particular, Judge Scott found that allegations of wire fraud contained in paragraph 6 of the indictment should not be stricken as prejudicial or irrelevant, because although time-barred, they are proper allegations of acts in furtherance of the scheme to defraud.  (Docket No. 10.)  In a separate Decision and Order, Judge Scott denied Blumhagen's Motion for Bill of Particulars, finding that further particularization was not required to protect Blumhagen from double jeopardy or to enable him to adequately prepare a defense and avoid surprise at trial.  (Docket No. 11.)  This Court accepted Judge Scott's Report and Recommendation on January 13, 2010.  (Docket No. 16.)

Blumhagen thereafter got a new lawyer who filed a second set of pretrial motions.  On October 24, 2013, the Honorable H. Kenneth Schroeder, Jr., United States Magistrate Judge, filed a Report and Recommendation recommending denial of Blumhagen's second set of pretrial motions.  (Docket No. 116.)  In particular, after a hearing, Judge Schroeder rejected Blumhagen's argument that the prosecution of the instant case is barred by the terms of his 2006 plea agreement in a separate case—<u>United States v. Blumhagen</u>, 03-CR-56S (the "Tee-to-Green" case). This Court accepted Judge Schroeder's Report and Recommendation on February 6, 2014. (Docket No. 128.)

### III. DISCUSSION

Now before this Court is yet a third round of pretrial motions, filed by Blumhagen's newest lawyer.  In this motion, Blumhagen argues that the indictment should be dismissed because (1) transactional immunity arising out of his 2006 plea agreement bars this prosecution, (2) the government cannot proceed without violating

3

the doctrine of use immunity, (3) delay in returning the indictment violates the Fifth Amendment, and (4) Counts 1-7 are multiplicitous. Blumhagen also moves for a Bill of Particulars and seeks to strike the government's request for a money judgment in forfeiture.[1]

**A.  Motion to Dismiss**

   **1.  Transactional Immunity**

Blumhagen argues that the doctrine of transactional immunity requires dismissal of the indictment. He begins from the premise that paragraphs 18 and 25 of his plea agreement in the Tee-to-Green case provide him transactional immunity. From there he argues that the government has admitted that the Tee-to-Green case and the instant case are "related," such that the transactional immunity conferred in the Tee-to-Green plea agreement bars this prosecution. This "admission" by the government, so goes the argument, is contained in its position that some evidence relating to Blumhagen's conviction and sentence in the Tee-to-Green case may be admissible at the trial of the instant indictment under Rule 404(b) of the Federal Rules of Evidence as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Based on this "admission," Blumhagen maintains that the government should be judicially estopped from arguing that transactional immunity does not apply.

Transactional immunity "accords full immunity from prosecution" for the offense to which the testimony at issue relates. Kastigar v. United States, 406 U.S. 441, 453, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The fatal flaw in Blumhagen's argument here is

---

[1] As both sides note, in the absence of a conviction, challenges raised to forfeiture are premature at this time. Blumhagen is free to raise his forfeiture arguments again if and when those arguments become ripe for review and resolution.

4

that there is no "admission" by the government that this case and the Tee-to-Green case are related for purposes of applying transactional immunity. Rather, Blumhagen takes the government's position on an evidentiary matter, stretches it, and relies on it out-of-context as the sole support for his argument. But the government's general evidentiary position simply does not equate to an admission that this prosecution is barred by transactional immunity. Consequently Blumhagen fails to show that prosecution of this case is barred by the doctrine of transactional immunity. Blumhagen's motion to dismiss on this basis is therefore denied.

    **2.    Use Immunity**

Blumhagen also argues that the related doctrine of use immunity bars this prosecution. He contends that the government was unable to indict this case and is unable to try this case without using evidence derived from his immunized proffer session or cooperation in the Tee-to-Green case. He further contends that the government changed its theory of this case based on information learned in his proffer session.

Yet as Blumhagen himself notes, the government has consistently maintained that it established this case against him *before* his proffer session and cooperation in Tee-to-Green. (See, e.g., Docket Nos. 29, 93.) The government is on record affirmatively stating that "none of the statements made by the defendant and none of the documents produced by the defendant in May of 2006 were presented to the grand jury or otherwise used directly or indirectly against the defendant." (See Docket No. 93.) The government's previous submissions describe with sufficient particularity the

course of events leading to the indictment in this case, none of which include the improper use of immunized material or statements.

To be sure, the government cannot use immunized information or evidence in the trial of this matter, a fact it recognizes. And while the manner in which the government allegedly cataloged----or failed to catalog---its evidence may raise admissibility issues, Blumhagen's broad speculation as to the government's conduct is not a valid basis for dismissal of the indictment. Blumhagen simply assumes that the government must have used immunized information to secure the indictment, and he assumes that the government's theory and understanding of its case could be impacted only by his proffer session or cooperation. These assumptions, however, are pure speculation. Blumhagen's request for dismissal based on his use immunity arguments is therefore denied.

### 3.     Fifth Amendment Due Process

Blumhagen next argues that dismissal of the indictment is required because the alleged 3-year delay between the investigation and the indictment of this case violates his Due Process rights under the Fifth Amendment. Blumhagen accuses the government of inexcusably neglecting this case, or worse, intentionally delaying the return of the indictment in order to disturb and maximize his incarceration in the Tee-to-Green case. The government denies neglecting this case or engaging in any intentional wrongdoing. It incorporates and relies on its earlier explanation, see Docket Nos. 29, 93, describing the course of securing the indictment, including the failed attempt at a global Rule 11(c)(1)(C) plea and Blumhagen's repeated agreement to exclude time from the Speedy Trial Clock.

A Due Process violation based on pre-indictment delay occurs when (1) the defendant's ability to present his defense is prejudiced, and (2) the delay "was so unfair as to violate fundamental concepts of fair play and decency, such as would occur if the prosecutor deliberately used the delay to achieve a substantial tactical advantage." United States v. Scarpa, 913 F.2d 993, 1014 (2d Cir. 1990) (quoting United States v. Rubin, 609 F.2d 51, 66 (2d Cir. 1979)); see also United States v. Marion, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).  The defendant bears the heavy burden of proving both prejudice and unfair delay, which can be satisfied by offering definitive proof of prejudice and establishing that the government acted intentionally or recklessly to cause the delay.  See United States v. Valentin, 3:14-cr-55 (VLB), 2016 WL 1296903, at 1 (D.Conn. Mar. 20, 2016)(citations omitted).  Here, Blumhagen proves neither.

The prejudice Blumhagen claims is that the filing of this action interrupted his sentence in the Tee-to-Green case and disqualified him from certain institutional programs that may have shortened his actual time in custody.  Whether true or not, this has nothing to do with the present inquiry:  whether Blumhagen's ability to defend this action has been prejudiced by the delay.  See Scarpa, 913 F.2d at 1014.  On that question, the only claim of prejudice Blumhagen arguably musters is that he has lost the opportunity for concurrent sentencing.  Even assuming such a lost opportunity, this claim, which is far removed from Blumhagen's ability to mount a defense, does not rise to the level of prejudice required to find a Due Process violation.

In any event, Blumhagen also fails to demonstrate that the government intentionally or recklessly delayed this action to gain a strategic advantage.  With no support, Blumhagen accuses the government of neglecting this case on the one hand,

and of intentionally delaying it to lengthen his Tee-to-Green sentence and circumvent the "grouping" provisions of the United States Sentencing Guidelines on the other.[2] But the government's explanation for the delay---that the parties were negotiating a global plea resolution with the Tee-to-Green case; that a new prosecutor was assigned; that new defense counsel was assigned; that new plea negotiations were undertaken---refutes Blumhagen's unsupported claim of intentional nefarious conduct. Blumhagen therefore fails to carry his burden.

Because Blumhagen has failed to carry his "heavy burden" of proving both prejudice and unfair delay, his request for dismissal of the indictment on Due Process grounds is denied. See Valentin, 2016 WL 1296903, at 1.

**4.     Multiplicity**

Blumhagen finally argues that the indictment must be dismissed because it is facially insufficient and multiplicitous. In particular, Blumhagen maintains that Counts 1-7 are not set out as independent counts, as required by Rule 7 of the Federal Rules of Criminal Procedure, and that Counts 1-7 essentially charge a single offense.

Blumhagen first complains that Counts 1-7 of the indictment are not set out as independent counts because they are presented in chart form in paragraph 7 of the indictment. Blumhagen claims that this manner of presentation fails to properly incorporate the preceding facts underlying the offenses charged. This, goes Blumhagen's argument, deprives him of testing whether the counts are sufficient under Rule 7.

---

[2] Blumhagen also faults the government for failing to ensure that he was adequately represented in this case when the global plea was discussed, but he fails to present this concern as a basis to dismiss the indictment at this stage.

In pertinent part, Rule 7(c)(1) requires the following concerning the content of a charging instrument:

> The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government.  It need not contain a formal introduction or conclusion.  A count may incorporate by reference an allegation made in another count.  A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means.  For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

Upon review of the indictment here, this Court finds that it sufficiently meets Rule 7's requirements and does not deprive Blumhagen the opportunity to test the sufficiency of the counts.  Counts 1-7 are set forth in paragraphs 2-7 of the indictment.  Blumhagen ignores paragraphs 2-6 of the indictment and focuses only on paragraph 7, where Counts 1-7 are presented in chart form.  But paragraphs 2-7, which fall under the caption "Counts 1-7," contain all of the information required by Rule 7, and indeed, Blumhagen points to no missing information.  Each of paragraphs 2-7 forms the basis for Counts 1-7, as clearly delineated in the indictment.  Blumhagen's motion to dismiss on Rule 7 grounds is therefore denied.

Moving to multiplicity, Blumhagen argues that the indictment is multiplicitous because it charges a single act seven times over as a means of accomplishing a single illegal scheme.  Blumhagen is incorrect.

"The multiplicity doctrine is based upon the double jeopardy clause of the Fifth Amendment, which assures that the court does not exceed its legislative authorization

by imposing multiple punishments for the same offense." United States v. Nakashian, 820 F.2d 549, 552 (2d Cir. 1987) (alteration and quotation omitted). "An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." United States v. Chacko, 169 F.3d 140, 145 (2d Cir. 1999). "It is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense'---in the legal sense as defined by Congress---complained of in one count is the same as that charged in another." Chacko, 169 F.3d at 146; see also United States v. Basciano, 599 F.3d 184, 198 (2d Cir. 2010). When the same statutory violation is charged twice (as here), "the question is whether the facts underlying each count were intended [by the legislature] to constitute separate units of prosecution." United States v. Ansaldi, 372 F.3d 118, 124 (2d Cir. 2004) (citing Bell v. United States, 349 U.S. 81, 83-84, 75 S.Ct. 620, 99 L.Ed. 905 (1955)).

Here, the indictment charges Blumhagen with seven distinct acts of wire fraud in Counts 1-7. Although each was allegedly committed as part of the charged scheme to defraud, these offenses are not the same in fact and law. They are separate units of prosecution for purposes of wire fraud.[3] See United States v. Castillo, 829 F.2d 1194, 1199 (1st Cir. 1987) ("each such use of the wires pursuant to a criminal fraud constituted a separate, independent, freestanding crime); cf. United States v. Eskow, 422 F.2d 1060, 1064 (2d Cir. 1970) ("Since each mailing pursuant to an alleged scheme to defraud constitutes a separate offense . . . the indictment is not vulnerable to a claim

---

[3] Blumhagen's reliance on United States v. Handakas is misplaced, as the cited portion of Handakas does not involve the wire-fraud statute at issue here. 286 F.3d 92, 98 (2d Cir. 2002)

10

of multiplicity."); United States v. Calvert, 523 F.2d 895, 903 n. 6 (8th Cir. 1975) (same). Blumhagen's multiplicity challenge therefore fails.

**B.     Motion for Bill of Particulars**

Blumhagen contends that he needs a Bill of Particulars on six specific categories to prepare his defense at trial as follows:

> (1) The precise of [sic] false and fraudulent pretenses, representations, and promises that the government intends to prove, including to whom, by whom, when and how they were made, including "Bates" number of any document claimed to reflecting [sic] the false and fraudulent pretense, etc.;
>
> (2) For each such false and fraudulent pretense, etc., precisely what is alleged to be false or fraudulent;
>
> (3) Each act on the part of the defendant that the government intends to prove, including where and when it occurred;
>
> (4) Each act on the part of anyone else for which the government will claim that the defendant is liable as an accessory or co-conspirator or otherwise;
>
> (5) The "companies and individuals" referred to in ¶ 3 of the indictment;
>
> (6) Every wire transfer or wire communication that the government intends to prove if not stated in the indictment.

(Docket No. 172, p. 28.)

Bills of Particulars are authorized by Rule 7(f) of the Federal Rules of Criminal Procedure and are to be used only to protect against double jeopardy, to enable adequate preparation of a defense, and to avoid surprise at trial. See United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). "The important question is whether the information sought is necessary, not whether it is helpful. It is improper to use a bill of

particulars to compel the Government to disclose the manner in which it will prove the charges or preview its evidence or legal theory." United States v. LaMorte, 744 F. Supp. 573, 577 (S.D.N.Y. 1990).

This Court has reviewed the indictment and the history of this litigation, including the government's disclosure of more than 3,200 pages of discovery.  In light of that backdrop, Blumhagen's request for a Bill of Particulars must be denied.  The indictment and discovery sufficiently allow Blumhagen to protect against double jeopardy, prepare a defense, and avoid surprise at trial.  Blumhagen's request for a Bill of Particulars goes beyond that, and essentially seeks an order compelling the government to preview how it intends to prove its case against him, including its evidence and theories.  Such is not a proper use for a Bill of Particulars.  See LaMorte, 744 F. Supp. at 577.  Blumhagen's request for a Bill of Particulars is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, Blumhagen's Supplemental Pretrial motion is denied in its entirety.

## V. ORDER

IT HEREBY IS ORDERED, that Defendant Steven D. Blumhagen's Supplemental Pretrial Motion (Docket No. 172) is DENIED.

SO ORDERED.

Dated:     July 1, 2016
           Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge